IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VICKIE LEE HARRIS,

             Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.

CIVIL ACTION FILE NO.

1:13-CV-03227-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to 205(g) of the Social Security Act, 42 U.S.C. 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her disability claims. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

## I. Procedural History

Plaintiff Vickie Lee Harris filed applications for a period of disability, disability insurance benefits, and supplemental security income on January 14, 2010, alleging a disability onset date of April 22, 2000. [Record (R.) at 133-44]. Plaintiff was

working at the time she filed the applications but stated that she had not earned more than $780 in any month since January 1, 2002, because of headaches, dizziness and arthritis.  [R. at 158-72].  After her applications were denied initially and on reconsideration, Plaintiff requested an administrative hearing which was held on January 9, 2012.  [R. at 28-73].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on March 19, 2012.  [R. at 12-27].  Plaintiff requested review of the ALJ's decision which the Appeals Council denied on July 25, 2013.  [R. at 1-6].  Having exhausted her administrative remedies, Plaintiff filed a complaint in this court on October 1, 2013, seeking judicial review of the Commissioner's final decision.  [Doc. 3].  The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that Plaintiff engaged in substantial gainful activity after her alleged onset of disability in January 2000 but that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, her amended alleged date of disability onset.  [R. at 17].  The ALJ found that Plaintiff meets the insured status requirement of the Social Security Act through March 31, 2008.  [Id.].

2

Plaintiff Harris has past relevant work experience as a hairdresser and clerical worker.  [R. at 21].  She was fifty-four years old at the time of the administrative hearing and has a tenth grade education.  [R. at 34].

The ALJ found that Plaintiff has degenerative disc disease and headaches which are "severe" impairments within the meaning of the Social Security Regulations and that Plaintiff has anxiety which the medical record evidence shows is a non-severe impairment.  [R. at 17-18].  The ALJ found that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the relevant listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically finding that Plaintiff does not have a disorder of the spine that meets Listing 1.04 and that her headaches do not meet any section in Listing 11.00.  [R. at 18].

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to stand for six hours of an eight-hour day with intermittent sitting and that she has the RFC to do the following:  frequently lift/carry twenty-five pounds and occasionally lift fifty pounds; frequently climb ramps and stairs; frequently balance, stoop, kneel, reach and crouch; occasionally climb ladders, ropes and scaffolds and crawl; and frequently reach in all directions bilaterally.  A vocational expert testified that Plaintiff's past relevant work does not require the performance of work-related

3

activities precluded by her RFC, and the ALJ found that Plaintiff is capable of performing the physical and mental demands of her past relevant work as such work as actually and generally performed. The ALJ therefore found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2007, through March 19, 2012, the date of the ALJ's decision. [R. at 21-22].

The ALJ's decision [R. at 15-27] states the relevant facts of this case as modified herein as follows:

The claimant testified that she is unable to sleep at night or function in society as she should. She stated that her anxiety, depression and pain affect her ability to work and that she is disabled because of the pain and medication she takes. She hurt her neck in a car accident in 2002 and states that muscle relaxers do not help her neck and that she has neck pain radiating into her right arm making it difficult to use her right arm and hand. She can lift five to ten pounds, but she has difficulty lifting heavy things and difficulty holding her right hand up for any period of time. The claimant has headaches and testified that Ultram does not help. She does not cook often because of forgetfulness. Her medication causes her to have dizziness, nervousness, tremors, and difficulty with balance which in turn causes her to have difficulty standing, and she often has to lie down due to the side effects of her medication. She

4

can stand and walk for thirty minutes at a time.  She can sit for thirty minutes at a time.  She does not bend; she stoops a little.  She has anxiety which she says makes her feel disconnected with her work.  But she has never been hospitalized because of mental impairments, and she stopped taking anxiety medications because they are addictive.  She testified that she has difficulty with concentration.  Her daughter helps with her bills.  She drives one to two times a week.  She no longer attends church like she used to, but she attends church on Sundays with her daughter.  She does not drive for longer than twenty minutes at a time.

The claimant has not required emergency treatment or inpatient hospitalization for her degenerative disc disease and headaches.  Her treatment has been limited to primary care providers.  Although she has headaches which have been attributed to her cervical condition and also to tension, she has not sought additional treatment for pain such as physical therapy or treatment from a pain clinic.  (Exhibits 3F and 8F).  Her 2011 treatment notes from Four Corners Primary Care (Dr. Aziz Pirani) and Medlink[1] (Dr. N. Abdulbaaqee) do not document abnormalities of the back or neck.  (Exhibits 12F and 16F).  The September and October 2011 treatment notes from

---

[1]Plaintiff received treatment at the Medlink Winder location, but, for ease of reference, the court will refer to the provider as "Medlink."

5

Medlink attribute the claimant's headaches to sinus symptoms.  And, in December 2011, it was noted that her headaches were helped by the prescription of Ultram and Oxycodone.  (Exhibit 16F).

An MRI of the claimant's right hand in February 2007 revealed trace tendinitis and tendosynovitis.  (Exhibit 2F).  X-rays of her cervical spine in September 2007 did not reveal any acute process at C6-7.  On examination in September 2007, she had some tenderness of the cervical spine, while, in April 2009, there was no tenderness in the cervical spine but tenderness in the cervical paraspinal muscles.  (Exhibit 3F). In March 2010, the claimant was examined by Dr. Dianne Bennett-Johnson, a consultative physician,[2] who noted a decreased range of motion of the neck and shoulders, negative straight leg raising, a normal neuropsychological exam, hypertrophic cervical spine muscles, and a mildly decreased grip on the left; an x-ray revealed degenerative disc disease at C5-6.  (Exhibit 4F).

Dr. Bennett-Johnson examined the claimant a second time, on November 22, 2010, and found decreased range of motion of the neck, decreased flexion of the lumbar spine, and pain with abduction of the right shoulder; x-rays of the claimant's

---

[2]The ALJ's decision refers to Dr. Bennett-Johnson as "Dr. Johnson."  [See R. at 20].

6

lumbar spine were normal.  (Exhibit 8F).  The notes from Four Corners Primary Care and Medlink document essentially normal physical examinations in 2011.  (Exhibits 12F and 16F).

Dr. Aziz Pirani with Four Corners Primary Care, who opined in April 2011 that the claimant was not capable of performing a full range of sedentary work due to pain and anxiety, evaluated the claimant only three times.   The claimant's physical examinations were normal, and Dr. Pirani did not document any limitations related to anxiety.  (Exhibits 12F, 13F and 14F).  Dr. N. Abdulbaaquee with Medlink opined in 2011 that the claimant was limited in functioning due to migraines but noted in December 2011 that the claimant's headaches were improved with Ultram and Oxycodone, and the Medlink treatment notes do not document any limitations related to migraines.  (Exhibit 16F).  On January 26, 2011, State Agency medical consultant, Dr. Bettye Stanley, D.O., completed a Physical Functional Capacity Assessment based on the available medical records and found, among other things, that the claimant had reported posterior headaches for ten years and that she had seen a number of doctors all of whom told her it was tension headaches.  (Exhibit 11F).

Additional facts will be set forth as necessary during discussion of Plaintiff Harris's arguments.

7

## III.   Standard of Review

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

"'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [she] is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving [her] disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.

At step one, the claimant must prove that she is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. See id.

AO 72A
(Rev.8/82)

"If the claimant cannot prove the existence of a listed impairment, [she] must prove at step four that [her] impairment prevents him from performing [her] past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.   Findings of the ALJ

The ALJ made the following findings of fact:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2.   The claimant has not engaged in substantial gainful activity since January 1, 2007, her amended alleged onset date. (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.   The claimant has the following severe impairments: degenerative disc disease and headaches. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

10

5.      The claimant has the residual functional capacity to: stand for six hours of an eight-hour day with intermittent sitting; frequently lift/carry twenty-five pounds; occasionally lift fifty pounds; frequently climb ramps and stairs, balance, stoop, kneel, reach, and crouch; occasionally climb ladders, ropes and scaffolds and crawl.  She is also frequently able to reach in all directions bilaterally.  See Exhibit 11F.

6.      The claimant is capable of performing past relevant work as a hair dresser and a clerical worker.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (20 C.F.R. §§ 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2007, through March 19, 2012.  (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[R. at 15-27].

## V.   Discussion

At the first step of the sequential evaluation, the ALJ found that Plaintiff Harris has not engaged in substantial gainful activity since January 1, 2007, her amended alleged date of disability onset.  [R. at 17].  At the second step, the ALJ found that Plaintiff has degenerative disc disease and headaches which are "severe" impairments within the meaning of the Social Security Regulations and that Plaintiff has anxiety which the medical records show is a non-severe impairment.  [R. at 17-18].  The ALJ found at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  [R. at 18].  At step four, the ALJ found that Plaintiff has the RFC to stand for six hours of an eight-hour day with intermittent sitting; frequently lift/carry twenty-five pounds and occasionally lift fifty pounds; frequently climb ramps and stairs; frequently balance, stoop, kneel, reach, and crouch; occasionally climb ladders, ropes and scaffolds and crawl; and frequently reach in all directions bilaterally.  The ALJ found that Plaintiff is capable of performing her past relevant work as a hair dresser and a clerical worker which work does not require the performance of work-related activities precluded by the claimant's RFC and that she can perform such work as it was actually and is generally performed.  [R. at 18-21].  The ALJ therefore concluded that Plaintiff is not disabled.  [R. at 21-22].

Plaintiff Harris argues that the ALJ's decision should be reversed.  [Doc. 13]. Plaintiff contends that the ALJ committed reversible error in analyzing her credibility by construing her inability to afford additional pain treatment against her claims of frequent headache and neck pain symptoms and that, although the ALJ found "a note indicating that Ms. Harris's headaches were helped with the use of Ultram and Oxycodone[,]" the notes show that she was still having "daily headaches" and that her doctors had at other times stated that medication was ineffective in controlling her headaches.  [Id. at 8-9].  Plaintiff's second argument is that the ALJ committed

reversible error by failing to even consider the side effects caused by Plaintiff's medications despite being discussed at the hearing.  [Id. at 9].  The Commissioner contends that the ALJ applied the proper legal standards and that the ALJ's decision is supported by substantial evidence.  [Doc. 14].

### A.  Pain Testimony and Inability to Afford Treatment

When a claimant seeks to establish disability through subjective testimony of her pain or other symptoms, a three (3) part "pain standard" established by the Eleventh Circuit applies.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain" or other alleged symptom.  Id.; see 20 C.F.R. §§ 404.1529, 416.929.  If the pain standard is met and the claimant's testimony, if credited, could support the claimant's disability, the ALJ must make and explain a finding concerning the credibility of the claimant's testimony.  See Viehman v. Schweiker, 679 F.2d 223, 227-28 (11th Cir. 1982).

AO 72A

(Rev.8/82)

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: daily activities; location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate her symptoms; treatment received and measures used, other than medication, for the relief of symptoms; and any other factors concerning the functional limitations and restrictions due to the claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing MacGregor v. Bowen, 786 F.2d 1050, 1054 (1986)).

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. In support of that credibility determination, the ALJ stated that Plaintiff had not required emergency treatment or

14

inpatient hospitalization for degenerative disc disease and headaches, that her treatment had been limited to primary care providers, and that, despite headaches attributed to her cervical condition or tension, Plaintiff had "not sought additional treatment for pain" such as physical therapy or treatment from a pain clinic. [R. at 19, citing Exhibits 3F and 8F]. The ALJ concluded that Plaintiff's "[o]verall . . . conservative course of treatment is inconsistent with a level of severity that would preclude the claimant from sustaining any work activity." [R. at 19]. Plaintiff argues that, in making those findings, the ALJ "construed lack of treatment against Ms. Harris without fulfilling his duty to determine whether there was a justifiable reason" for her not seeking additional treatment.  [Doc. 13 at 6].

"When evaluating a claimant's statements regarding [her] symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints." Beegle v. Social Sec. Admin., Comm'r, 482 Fed. Appx. 483, 487 (11th Cir. 2012) (citing Social Security Ruling ("SSR") 96-7p).  However, an ALJ "may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits

or failure to seek medical treatment[,]" for example, an individual "may be unable to afford treatment and may not have access to free or low-cost medical services."  SSR 96-7p.  Plaintiff testified that she had been receiving treatment at several clinics without insurance [R. at 51], but she argues that the record contains several reports of her inability to afford further specialized treatment [Doc. 13 at 8, citing R. at 299, 317, 353, 414, 416].

The records cited by Plaintiff show that, on January 4, 2010, Dr. Martin noted that Plaintiff's headaches persisted and that, although she had a full work-up including CTs and x-rays of her neck in the past, she had no finances for further testing in January 2010.  [R. at 299].  On March 10, 2010, Plaintiff complained to the consultative physician, Dr. Bennett-Johnson, that she had hit her head on the windshield in a motor vehicle accident fifteen years earlier and that a neurosurgeon had found that Plaintiff's main problem after the accident was "arthritis in the neck and not a disc issue" for which she received chiropractic treatment and medication but a "medical workup was never completed because of loss of insurance."  [R. at 317].  Between October and December 2011, Plaintiff's treating physician at Medlink, Dr. Abdulbaaqee, noted that the etiology of Plaintiff's chronic tension headaches was unclear after a negative MRI and prior workup and that Plaintiff had checked with

16

Mercy Clinic and Good Samaritan which did not have a neurologist and was unable to afford a workup by a neurologist.  [R. at 412, 414, 416].  And a November 2010 note documents that Plaintiff was unable to get a full evaluation and treatment for a uterine fibroid because she did not have insurance.  [R. at 353].

The Commissioner contends that, even assuming Plaintiff did not have adequate funds for treatment, the ALJ's failure to discuss Plaintiff's ability to pay is not reversible error because the ALJ did not base his decision primarily on her failure to obtain additional treatment and, instead, based his decision mainly on the existing objective medical record evidence and reports by Plaintiff and her daughter regarding Plaintiff's activities.  [Doc. 14 at 5-8].  "[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was unable to afford the prescribed treatment."  Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003). However, although an ALJ must consider evidence showing that a claimant is unable to afford medical care before denying disability insurance benefits, "where the ALJ does not base his decision significantly or solely on noncompliance [or, as in this case, on a failure to pursue additional treatment for allegedly severe pain], the ALJ does not

17

err by failing to consider the claimant's inability to afford treatment." <u>Dereyes v. Astrue</u>, 2012 WL 4479581, at *12 (N.D. Ala. September 26, 2012); <u>accord</u> <u>Beegle</u>, 482 Fed. Appx. at 487. The court finds that, unlike <u>Snyder v. Comm'r of Social Sec.</u>, 330 Fed. Appx. 843 (11th Cir. 2009), cited by Plaintiff, the ALJ based his credibility assessment of Plaintiff Harris's pain testimony mainly on objective medical records and other evidence and not primarily on Plaintiff's failure to seek additional treatment with a specialist. <u>Compare</u> <u>Snyder</u>, 330 Fed. Appx. 847-48.[3]

And substantial medical record evidence supports the following findings by the ALJ which, in turn, support the ALJ's credibility determination. Plaintiff had not required emergency treatment or in-patient hospitalization for her degenerative disc disease or headaches. [R. at 19]. Her 2007 medical records included an MRI of the right hand which revealed only trace tendinitis and tendosynovitis, and x-rays of her

---

[3]<u>Burroughs v. Massanari</u>, 156 F. Supp. 2d 1350 (N.D. Ga. 2001), another case cited by Plaintiff, is also inapposite to Plaintiff's case. In <u>Burroughs</u>, the ALJ found that the plaintiff did not perceive herself as depressed and had not obtained treatment from a mental health specialist which the ALJ construed as indicative of an absence of significant illness; the court disagreed stating that Burrough's failure to obtain additional treatment could also be due to her obviously low economic status. <u>Id.</u> at 1364. Here, in contrast to <u>Burroughs</u>, Plaintiff perceives herself to be in pain and has been obtaining treatment from a number of clinics; and, as discussed herein, while Harris may not be able to afford specialized treatment, her failure to obtain such treatment was not the ALJ's primary reason for finding Plaintiff's allegations and pain testimony less than fully credible.

18

cervical spine in 2007 in did not reveal any acute process or impingement of the neural foramina at C6-7. [R. at 19, 281]. Plaintiff was noted to be very tender over the cervical spine in September 2007 but reported that the pain in her neck and head did not radiate into her arms, and Dr. Martin found no one-sided neurological symptoms of any type. [Exhibit 3F; R. at 19-20, 304]. There was tenderness in Plaintiff's cervical paraspinal muscles when she saw Dr. Martin in April 2009 but not over her cervical spine. [Exhibit 3F; R. at 20, 300]. Plaintiff did not see Dr. Martin again until January 2010; she was tender in the back of her neck over her cervical spine at that time, but neurological exam of the upper extremities was within normal limits. [R. at 299]. In March 2010, Dr. Dianne Bennett-Johnson, a consultative examiner, found a decreased range of motion in Plaintiff's neck and shoulders, that her cervical muscles were hypertrophic, and that Plaintiff complained of radiculopathy to the right arm but that her grip was mildly decreased on the left. [Exhibit 4F; R. at 20, 317-19]. An x-ray revealed only degenerative changes in the cervical spine with degenerative disc disease suspected at C5-6. [R. at 320]. Plaintiff saw Dr. Bennett-Johnson a second time, in November 2010, and x-rays of the lumbar spine showed no significant abnormality, disc height was well preserved, and there were no vertebral compression fractions. [Exhibit 8F; R. at 20, 239, 349]. Dr. Bennett-Johnson found

19

that, while Plaintiff had a decreased ability to reach on the right [R. at 378 (Reaching in all directions (including overhead) limited to "FREQ. ROM 135 RT and 145 LT")], Plaintiff was okay for ADLs involving, for example, use of a keyboard or sorting and handling at or above the waist with a decreased ability on the right if at or above the shoulder [R. at 352]. And Plaintiff's 2011 treatment notes from Four Corners Primary Care and Medlink were essentially normal physical examinations [R. at 20, citing Exhibits 12F and 16F], which is supported by substantial record evidence.  Plaintiff reported to Four Corners Primary Care on February 1, 2011, that she had no neck symptoms and no headache.  [R. at 391-92].  She had no neck pain and no complaint of headaches on February 17, 2011.  [R. at 389-90].  She reported no headache and no neck pain on March 24, 2011.  [R. at 384].  In September and October 2011, Plaintiff's headaches were attributed to sinus symptoms.  [R. at 20, 415,  418].  And Dr. Abdulbaaquee reported in December 2011 that Plaintiff's headaches were improved with Ultram and Oxycodone.  [R. at 20, 412].

Plaintiff argues that the medical record shows that she was still having "daily" headaches in December 2011.  [Doc. 13 at 9].  The record states, "headaches are still occurring on daily basis; oxycodone caps helped, not tabs and ultram helps[,]" which supports the ALJ's finding that Ultram helped Plaintiff's daily headaches.  Plaintiff

testified two months later, at the hearing, that Ultram did not help her headaches, and she argues that doctors have noted that other medication was ineffective in controlling her headaches. [Doc. 13 at 9, citing R. at 299 and 305]. The records cited by Plaintiff show that Dr. Martin noted in 2010 that migraine medications were not effective for Plaintiff's headaches [R. at 299] and in July 2007 noted that Imitrex was not effective but that Plaintiff did not have nausea associated with migraines [R. at 305]. Dr. Martin had previously noted, on April 7, 2009, that Plaintiff's headaches "clearly do not have a migraine pattern" and are "probably muscular in origin." [R. at 300]. And, in January 2011, State Agency physician, Bettye Stanley, D.O., to whom the ALJ gave significant weight, found that Plaintiff's allegations of headaches and dizziness were only partially credible because the severity of her alleged symptoms was not fully consistent with the total medical and non-medical evidence of record which shows that Plaintiff complained of headaches for ten years and had seen a number of doctors and that "all had told her that it was tension headaches." [Exhibit 11; R. at 20,  377].

The ALJ also based his credibility finding on other record evidence of Plaintiff's activities as described by Plaintiff to Dr. Bennett-Johnson in March and November 2010 (Exhibits 4F and 8F) and by her daughter, Lakendra King, in November 2010 (Exhibit 10E). [R. at 20]. Plaintiff was doing light cleaning and

21

laundry and ironing (a little at a time).  She had no problem with her personal care. She was driving by herself once a month to do food shopping, and she was going to church once a week without needing someone to accompany her.  [R. at 373].  At the hearing in February 2012, Plaintiff testified that she still drove once or twice a week to the store or to doctor appointments, that she drove to Dr. Abdulbaaquee's office for appointments which was twenty minutes away, and that she drove to her daughter's house "every now and then" in Winder and would sometimes go with her daughter to church in Gainesville on Sunday.  [R. 51-54].  The ALJ found that Plaintiff's activities are not limited to the extent one would expect given her complaints of disabling pain. And the court agrees.

Plaintiff has the burden of proving that her impairment prevents her from performing her past relevant work.  Doughty, 245 F.3d at 1278.  Plaintiff was responsible for producing evidence in support of her claim and pain testimony.  See 20 C.F.R. § 416.912(a) ("[Y]ou have to prove to us that you are . . . disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled.").  The

22

court finds that Plaintiff's pain testimony is contradicted by the objective medical record and other record evidence concerning her daily activities as stated in the ALJ's decision. Substantial medical record evidence and other evidence supports the ALJ's credibility determination and demonstrates that the ALJ applied the proper standard in reviewing Plaintiff's pain testimony. See Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987). And, because the ALJ based his decision mainly on the objective medical records and other record evidence produced by Plaintiff, the ALJ did not err by not discussing Plaintiff's financial inability to afford additional treatment. See Dereyes, 2012 WL 4479581, at *12.

**B.  Discussion of Medication Side Effects**

Plaintiff argues that the ALJ had a duty to elicit testimony and make findings regarding the effect of her prescribed medications on her ability to work [Doc. 13 at 9, citing Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981)] and contends that the ALJ failed to consider the side effects of her medication despite substantial discussion at the hearing that medication causes her to be forgetful and that Ultram, specifically, causes her to need to lie down and sleep daily [Doc. 13 at 10, citing R. at 39, 42 and 44]. In Cowart, the court held that the ALJ had a heightened duty to develop the facts of the case because the claimant was unrepresented and had not

23

waived her right to counsel. 662 F.2d at 735. Plaintiff Harris, however, was represented by counsel at the hearing. The ALJ had an obligation to develop the record and to consider the type, dosage, effectiveness and side effects of any medications when making a determination of disability. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). But Plaintiff "has the burden of proving disability . . . [and] the burden of submitting evidence to support her claim that the side effects of her medication make her unable to work." Bennett v. Astrue, 2013 WL 4433764, at *6 (N.D. Ala. August 16, 2013) (citing Ellison, 355 F.3d at 1276; Walker v. Comm'r. of Soc. Sec., 404 Fed. Appx. 362, 366 (11th Cir. 2010)). The Commissioner argues that Plaintiff failed to prove that her alleged side effects significantly limit her ability to work. [Doc. 14 at 10].

Plaintiff testified, "I feel I'm disabled because I'm in so much pain all the time and also I take medication all the time and it keeps me up through the night and dysfunctional. And it keeps me where mentally and emotionally I'm not able to function in society like I should." [R. at 36]. The record shows that Plaintiff was prescribed Ultram in September 2011. [R. at 418-19]. At the hearing in February 2012, she testified, "I've taken several which don't work and . . . [i]t puts me to sleep . . . ." [R. at 39]. Plaintiff testified that she does not cook often because she is

24

sometimes forgetful.[4]  [R. at 42 and 47 ("I think its because of . . . the medication too that I forget a lot, you know, concentration.")].  Asked to describe "all the side effects" of her medication, she described dizziness, nervousness, tremors, and being off balance and dropping things.  [R. at 42].

Plaintiff argues that her side effects from medication are "severe" and, specifically, that "a finding consistent with her allegations would support her inability to maintain concentration and her inability to perform work at any exertion level." [Doc. 13 at 10].  However, the records cited by Plaintiff do not show that she reported a problem with concentration as a side effect of medication.  Plaintiff was prescribed Ultram in September 2011, with the addition of Oxycodone in October 2011.  [R. at 19, 414, 416, 419].  According Dr. Abdulbaaquee's December 2011 treatment notes, Plaintiff reported no memory loss, and there is no mention in the notes of medication side effects.  [R. at 412-13].  Plaintiff occasionally reported dizziness or feeling nervous in the past.  [R. at 164, 214, 318, 354, 390-94, 413].  For example, Dr. Pirani noted that Plaintiff stopped amoxicilline (an antibiotic) because she felt dizzy [R. at 391] and that, as she was being weaned off of anxiety medication, Plaintiff felt dizzy [R. at 392].  But dizziness was noted only in the neuro/psychiatric portion of the

---

[4]The court notes that Plaintiff has a gas stove.  [R. at 41].

25

December 2011 exam notes [R. at 413], and Plaintiff denied such symptoms during other exams in 2011 [R. at 384, 387-88, 395].  For these reasons and authority, the court finds that the medical record does not document medication side effects which would significantly limit Plaintiff's ability to work and that Plaintiff's report to the ALJ regarding the side effects of her medication was out of proportion to the reports that she made to her medical providers.  The ALJ therefore did not err when he did not discuss work-related limitations resulting from medication side effects.

For the foregoing reasons and cited authority, the court finds that the ALJ's decision was supported by substantial evidence and based upon proper legal standards. It is, therefore, **ORDERED** that the Commissioners decision be **AFFIRMED**.

The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**SO ORDERED**, this 10th day of March, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

26